The City of Pana, Plaintiff-Appellee, *v.* Harold Crowe *et al.*, Defendants-Appellants.

(No. 72-248;

Fifth District—July 23, 1973.

CREBS, J., dissenting.

J. Dale Berry, of Kleiman, Cornfield and Feldman, of Chicago, for appellants.

Joseph L. Fribley, of Fribley & Fribley, of Pana, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Does the Illinois Anti-Injunction Act (Ill. Rev. Stat., ch. 48, sec. 2(a)), prohibit the issuance of an injunction against a strike by city employees engaged in the maintenance of services essential to the public?

Plaintiff-appellee is the City of Pana, population 6,400, and defendants-appellants are a local union of municipal employees, its officers and members. The city operates water, sewer, street and police departments, the employees of which are members of the local union. Prior to April 30, 1972, the city and the local union were parties to a collective bargaining agreement. Before the date of expiration of the agreement negotiations were conducted with a view to its extension, but the negotiations were unsuccessful. On Friday, June 9 the mayor was notified by telephone that the members of the union had voted to call a strike effective at 7:00 A.M. on Monday, June 12. At the appointed time a majority of the city employees had failed to report for work. At 8:00 A.M. the city obtained *ex parte* a temporary injunction which enjoined the work stoppage. The injunction was served shortly thereafter and the employees were back at work before 10:30 A.M. that morning. After a hearing in which both parties participated the temporary injunction was made permanent. The order for the permanent injunction made findings that the failure of the individual defendants to report for work, or to continue their work, was a direct interference in the operation of the city's water, sewer, street and police departments with the resultant inability of the city to maintain the services furnished by those departments.

It goes without question that such services may be deemed essential to the health, safety and welfare of the city's inhabitants. The injunction prohibited the officers, agents, representatives and members of the defendant union or persons acting in combination, consort or sympathy with them from:

"(a) Engaging in a strike or any form of cessation of work, against the City of Pana.

(b) Hindering or obstructing in any manner the use and maintenance of the building, structures, machinery and equipment, owned, rented, maintained and used by the City of Pana, in its governmental or proprietary functions."

Defendants have appealed contending that the injunction was issued in violation of the plain terms of the Anti-Injunction Act and therefore it should be dissolved. The plaintiff contends, on the other hand, that there are expressions of public policy found in certain constitutional and statutory provisions relating to the public health, safety and welfare which effectively override the provisions of the Anti-Injunction Act, that since the services involved here are furnished by the city pursuant to the mandate of such constitutional and statutory provisions the Anti-Injunction Act is accordingly rendered inapplicable.

■■ Broadly stated the Anti-Injunction Act prohibits the issuance of injunctions against peaceful picketing or strikes. It is to be noted that the Act states no exceptions to its application in the event peaceful picketing or a strike is being conducted by public employees or where the employment relates to the public health, safety and welfare.

In addition to the Anti-Injunction Act we must heed three relevant decisions of the supreme court. The first of these is *Board of Ed. of Community Unit School Dist. No. 2 v. Redding* 32 Ill.2d 567, 207 N.E.2d 427. The case involved a strike by custodial employees of a school district. Upon application by the governing board of education the trial court refused to enjoin the strike or the attendant picketing upon the grounds that plaintiff had failed to show irreparable injury and the picketing was peaceful and a valid exercise of free speech. On appeal the supreme court reversed, finding that there was expressed in the Illinois constitution a public policy to provide a thorough and efficient system of free schools which was of sufficient importance to transcend the right of custodial workers at a school to strike or picket. The anti-injunction statute was not mentioned.

Next, in *Peters v. South Chicago Community Hospital* (1969), 44 Ill. 2d 22, 253 N.E.2d 375, the court considered the application of the Anti-Injunction Act to a strike by employees of a not-for-profit hospital. It was there argued, akin to *Redding*, that the public interest in the uninterrupted and efficient operation of hospitals would override the public interest in the rights of hospital employees to strike and picket. The supreme court rejected the argument, stating:

> "The language of the statute is clear and it makes no exceptions for hospitals. This is the only legislative expression of public policy which touches on the labor relations of these not-for-profit hospitals. As we have mentioned, the General Assembly has failed to enact legislation which would govern these labor relations otherwise than as expressed in the anti-injunction statute. Unlike *Redding* there is no overriding expression of public policy here such as the constitutional mandate that the General Assembly shall

'provide a thorough and efficient system of free schools, * * *.'
Ill. Const. art. VIII, sec. 1."

The court accordingly declined the public policy exemption from the Anti-Injunction Act in favor of a not-for-profit hospital.

Finally, in *County of Peoria v. Benedict* (1970), 47 Ill.2d 166, it was squarely held that the Anti-Injunction Act applies to public employees. Involved there was a strike by employees of a nursing home operated by Peoria County pursuant to statutory authorization. The court stated with little ceremony that for the same reasons given in *Peters v. South Chicago Community Hospital* the Anti-Injunction Act was applicable and the preliminary injunction was erroneously issued.

Confronted with these decisions the appellee city asks this court to find in certain constitutional provisions and statutory enactments an expression of public policy which would justify, if not require, our finding as overriding of the Anti-Injunction Act, as in the *Redding* case. We are reminded that the city performs services of water purification and distribution, sewage treatment and disposal, police protection and street maintenance—functions undoubtedly vitally concerned with the health, safety and welfare of the city's inhabitants. Specifically, the city cites the preamble to the 1970 Illinois Constitution which states one of the purposes of establishing the constitution as being "In order to provide for the health, safety and welfare of the people;" and art XI, sec. 1 of the 1970 Illinois Constitution which provides: "The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and the future generations." The city also cites art. XI of the Municipal Code (Ill. Rev. Stat., ch. 24, art. XI, sec. 1—1) which carries the subtitle of "Public Health, Safety and Welfare" and contains statutes authorizing (but not requiring) cities to provide fire and police protection, sewage disposal services, etc. The city finally points to certain provisions of the Environmental Protection Act (Ill. Rev. Stat., ch. 111½, sec. 1001, *et seq.*) which generally prohibits the pollution of the environment and makes it incumbent upon owners and official custodians of public water supplies to maintain water supply facilities so as to assure a safe, clean and adequate water supply for domestic consumption.

We have examined these references and find them to be general, scattered and indirect and at best to constitute vague authority for the proposition advanced. We are unable to find in them an expression of public policy sufficient to override the clear and direct expression of the Anti-Injunction Act. We think it better to adhere to the obvious and hold that the Anti-Injunction Act does apply to the case at hand. Which we do. The conclusion is compelled by the *Benedict* case.

The city understandably is able to ascribe to the public a greater interest in maintaining the services involved here than with the operation of a county nursing home as in *Benedict*. But such a distinction would be too finely drawn. We cannot in good conscience find greater public concern in the functions of police, sewer, water and street departments than with the care of the sick, the aged, the infirm and the helpless.

In the *Peters* case the Supreme Court noted that the anti-injunction statute is the only legislative expression of public policy which touches on the labor relations of not-for-profit hospitals. The statement is likewise true for the employees of the City of Pana. The Anti-Injunction Act was adopted 48 years ago in 1925. Time has witnessed a change in attitudes regarding collective bargaining by public employees. More than half of the states and the federal government as well have enacted legislation recognizing rights of some public employees to form associations and enter into collective bargaining agreements respecting such matters as wages and working conditions. Such recognition of the rights of public employees has come in response to ferment and agitation in which public employees claim, with considerable justification, the same right to collective bargaining and impasse resolution as employees in the sector of private employment. These forces are present in Illinois and have frequently resulted in highly disruptive and sometimes dangerous strikes. Although there have been two reports to the legislature from investigating commissions which have recommended the adoption of appropriate legislation, none has been forthcoming and the anti-injunction law remains essentially the only statute in the field. (See the Report of the Governor's Advisory Commission on Labor-Management Policy for Public Employees, 1967, and the Report and Recommendations of the Commission on Labor Laws to the Governor and the General Assembly, 1971 and 1973.) The 1971 report of the Commission on Labor Laws stated: "There can be little question, moreover, that it is preferable to have the basic framework for union-management relations in the public sector established by legislation rather than to have the law evolve in piecemeal fashion through judicial decisions." With this conclusion the courts can only be in hearty agreement. The case by case pronouncement of decisions of courts are made in answer to specific issues and cannot serve to create a satisfactory body of public employee labor laws. The result must necessarily be segmented and piecemeal, unsatisfactory alike to governmental employers, their employees and the public.

■■ The order issuing the permanent injunction is reversed.

G. MORAN, P. J., concurs.

Mr. JUSTICE CREBS dissenting:

While I heartily agree with that portion of the opinion which indicates that the General Assembly should take further action in regard to union management relations in public employment, I do not concur in the result reached in this case. In my opinion the situation here is governed by *Board of Education v. Redding,* 32 Ill.2d 567 rather than *County of Peoria v. Benedict,* 47 Ill.2d 166.