CONFEDERATION OF POLICE, a not for profit corporation, et al., Plaintiffs-Appellants,

v.

The CITY OF CHICAGO, a Municipal Corporation, et al., Defendants-Appellees.

No. 74–2026.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1975.

Decided Jan. 15, 1976.

As Amended Jan. 16, 1976.

Rehearing Denied March 8, 1976.

Gilbert A. Cornfield, Chicago, Ill., for plaintiffs-appellants.

William R. Quinlan, Acting Corp. Counsel, Robert Retke, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Plaintiffs appeal from an order denying their claim for "a written procedure for collective bargaining and the processing of grievances in relation to hours, wages and working conditions. . . ." We reverse.

The plaintiffs-appellants in this action for declaratory and injunctive relief are the Confederation of Police ("COP") and several of its officers. COP is an employee organization consisting of the majority of the sworn members of the Chicago Police Department in the patrolman classification. Approximately 6,000 of Chicago's 10,000 active patrolmen are among the COP's 6,200 paying members.

The patrolmen's basic concern pertain to adverse job actions against them short of discharge. Chicago patrolmen are subject to changes in geographic assignment and work schedules without, they claim, effective explanation or review. They are also subject to denials of proposed vacation schedules and leaves of absence, and to demotions which may result in a loss of pay to the patrolman in excess of $1,000 per year.[1] Such demotions may apparently be based upon efficiency reports prepared every six months by a patrolman's superior. The patrolmen maintain that such reports are not shown to the officer affected, and that the officer has no effective opportunity to question the accuracy of the reports or to raise countervailing considerations. The patrolmen also suggest that demotions may be made on the basis of their actions within COP.[2]

Appellants relied upon two basic arguments in the district court, and they reassert them here. First, they maintain that, inasmuch as collective bargaining rights and grievance procedures have been extended to the non-academic employees of the Chicago Board of Education and to the civil service employees of

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. Plaintiffs testified in the district court to instances in which patrolmen have been effectively demoted through reassignment from positions as detectives, youth officers and radio dispatchers. These positions pay about $1,000 per year more than other patrolman positions.

2. The district court explained these efficiency reports thusly:

   Police Department Notice No. 74–10 sets out in detail, however, the procedures to be followed by superiors in rating their subordinates against the objective criteria of quality of work, quantity of work, attendance and promptness, dependability, and indicating what items should be considered under these categories. It cautions that the rater evaluate each member according to the same set of fair and impartial standards and that the ratings should be used by a superior to inform the subordinate of the areas where improvement is needed and to counsel him how to attain an improved level of performance.

   Evidence in the record indicates that these efficiency reports may not be utilized on each occasion as envisioned by the Notice. Patrolman Walter Viesiada, Treasurer of COP, testified that he had been a detective from December 15, 1967, until March, 1973 (three months after becoming Treasurer of COP), when he was notified that he would be working as a uniformed patrolman. No explanation was offered for this reassignment. Viesiada testified, however, that he read in the *Chicago Tribune* that everyone who had been demoted at the time he was demoted, was demoted for inefficiency. He was never informed of the contents or any efficiency reports concerning him.

the Chicago Library System, the defendants' failure to establish such procedures for, and to extend such rights to, patrolmen is claimed to constitute a violation of the equal protection clause of the fourteenth amendment. Secondly, appellants maintain that due process requires that such rights and procedures be extended to them.

In *Confederation of Police v. City of Chicago,* 382 F.Supp. 624 (N.D.Ill.1974), the district court held that police have no "constitutional (due process) right to a grievance procedure or to make collective bargaining mandatory", in support of which the court cited several collective bargaining cases.[3] The court then addressed the equal protection claim. The district court found that the organization of the Chicago Board of Education was so dissimilar to that of the Police Department that no valid comparison could be drawn for equal protection purposes. Accordingly the court indicated that the operations of the Chicago Library Board provided the only conceivable basis upon which it could find an improper classification among civil service employees of a like nature. Even with respect to library personnel, the court noted that there may have been no involvement of the Mayor of Chicago in negotiations. Nonetheless, the district court went on to address the equal protection claim, holding first that it is no violation of the equal protection clause for the legislature to permit collective bargaining with some entities and not with others. The court further held that there is a rational basis for distinguishing between police officers and library workers in extending collective bargaining rights: because the police department is a quasi-military organization, "it would be improper for police officers to begin questioning the orders of their superiors at the time they are issued." The district court accordingly dismissed the complaint.

The district court seemed to tacitly presume that the patrolmen sought a unitary package of relief—collective bargaining rights and a written grievance procedure—and that they were either entitled to the full package or to nothing at all. We disagree. The issues involved in the demand for a grievance procedure differ greatly from those involved in the demand for collective bargaining rights, and we shall treat them separately here.

I

We turn first to the due process rights of policemen to a written grievance procedure regarding adverse job actions short of discharge.

Any consideration of the due process rights of public employees must begin with an analysis of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *Roth* dealt with the nonrenewal of the contract of a nontenured teacher; *Perry* dealt with nonrenewal of the contract of a teacher who could point to a policy of the state school which vested him with *de facto* tenure. In *Roth* the Supreme Court held that the nontenured teacher was not entitled to a hearing on his discharge unless he could show that the decision not to rehire him somehow deprived him of an interest in "liberty," or that he had a "property" interest in continued employment. In *Perry,* the Court held that the *de facto*-tenured teacher had shown such a "property" interest, and thus was entitled to a hearing when the state school decided not to rehire him.

The district court held that because the case at bar deals with conditions of employment rather than termination of employment, *Perry* (and, by implication, *Roth*) did not apply. We do not believe that these landmark cases are limited by their facts.

**3.** *Lontine v. Van Cleave,* 483 F.2d 966, 968 (10th Cir. 1973); *Newport News Firefighters Ass'n Local 794 v. City of Newport News,* 339 F.Supp. 13, 17 (E.D.Va.1972); *Atkins v. City of Charlotte,* 296 F.Supp. 1068, 1077 (W.D.N.C. 1969); *Cook County Police Ass'n v. City of Harvey,* 8 Ill.App.3d 147, 289 N.E.2d 226 (1972).

The distinction between *Roth* and *Perry* is not difficult to draw. The interest of the *Roth* teacher in his employment was created solely by his contract. If "interest" is defined as something emanating from the state through its agencies, the *Roth* teacher had no further interest in his employment upon the expiration of that contract. The *Perry* teacher, however, had an interest which outlived the one-year life of his contract: the *de facto* tenure policy created by the state school vested him with a continuing interest. This interest emanated from the state through its agency, and thus was sufficient to warrant protection by the due process clause.

█ When *Roth* and *Perry* are · so viewed, it becomes evident that the patrolmen in the action before us, like the tenured teacher in *Perry,* have a continuing interest which is to be protected by the due process clause. The continuing employment relationship between the plaintiff patrolmen and the defendants, as agents of the state, vests the patrolmen with a sufficient "interest" in freedom from arbitrary adverse job action.

█ A sufficient property interest to require due process may be found in an "entitlement" to a particular job. *Goss v. Lopez,* 419 U.S. 565, 572, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). If there is such entitlement, then transfer of an individual to a job with less pay or imposing substantially greater burdens is an impairment of this entitlement, a taking of property which can be accomplished only after compliance with due process procedures. In this case, we conclude that entitlement to the particular job arises from Ill.Rev.Stat. ch. 24, § 10–1–18.1 (1973). This statute provides for a hearing for a suspension of thirty days or more and for termination. We think that a demotion or other substantially disadvantageous change is the kind of loss which can only be imposed after meeting standards of due process. Because the district court held that the patrolmen had no such procedural rights, it determined neither the extent of those rights nor the amount of protection necessary for them. We cannot determine these issues from the record before us; they must be resolved upon remand. It is not improper for this Court, however, to afford some direction to the district court in this regard.

██ In the context of the operations of a police department, we do not believe that grievance procedures require a stay of ordered and orderly transfers and demotions. The police department must be capable of immediate response to emergency situations. This capability would be substantially impaired if, for example, patrolmen were permitted to refuse to honor transfers pending exhaustion of grievance procedures. This concern for the effective performance of the police department is no justification for a complete denial of all procedural rights but transfers, demotions and the like should be presumed valid until successfully challenged through the grievance procedures.

The district court should give special attention to the forms that the adverse job action may take. Several such actions have been mentioned here; among the most obvious is the demotion which can cost the policeman up to $1,000 per year. At oral argument, counsel for appellants alluded to other more subtle, non-obvious adverse actions. Each such action should be analyzed, and the district court must determine whether the rights of the patrolmen encompass freedom from arbitrary imposition of such actions and, if so, how those rights are to be protected.

██ The grievance procedures to be afforded the patrolmen need not mirror in all respects those afforded other civil servants. The quasi-military quality of the police force does not justify complete denial of all grievance procedures. It does, however, justify use of a different grievance procedure within the police department.

## II

█ As regards collective bargaining, we do not believe that the patrolmen have made out an equal protection claim.

Under traditional equal protection analysis, once it has been shown that the "state action" in question benefits one class of those affected and burdens another, it is necessary for the classification to have a rational basis or, if the classification is inherently suspect or infringes upon a fundamental right, the classification must be shown to be necessary to promote a compelling state interest. *James v. Valtierra,* 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971); *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Until the first hurdle has been crossed, however—the showing that one class has been burdened while another has been benefited by the acts of the defendants—equal protection cannot be shown to have been violated. State action cannot violate the equal protection clause if it does not create classifications among, or discriminate between, those affected. *Palmer v. Thompson,* 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971).

■ The patrolmen have cited two classes of civil service employees who possess collective bargaining rights. One such group consists of the non-academic employees of the Chicago Board of Education. The district court found, however, that the granting of collective bargaining rights to this group did not constitute discrimination against the patrolmen. The Board of Education is a separate corporate entity with its own management and budget; following appointment by the Mayor, members of the Board of Education are independent officers; job qualifications and categories are established by the Board of Education rather than by the Civil Service Commission. Accordingly, the district court held that the Board of Education was not comparable to the police department for equal protection purposes. We agree. Action taken relative to the non-academic employees of the Board of Education does not constitute discrimination against the patrolmen.

■ The other group of civil service employees cited by the patrolmen consists of library workers. It is not clear from the record before this Court, however, that the City of Chicago or any of the defendants granted collective bargaining rights to these workers. Thus, the patrolmen have not shown that there has been any discriminatory action by the defendants, and the patrolmen are accordingly on no better footing than were the plaintiffs in *Palmer v. Thompson, supra.* In *Palmer,* the city of Jackson, Mississippi, rather than desegregating its public swimming pools, elected to close all such pools. The plaintiffs alleged that the motive for such action was discriminatory, and hence claimed that the fourteenth amendment had been violated. The Supreme Court held that regardless of the motive for the action, the closing of the pools burdened black and white alike and benefited neither, and hence could not offend the equal protection clause. There, as here, the plaintiffs' failure to show discriminatory action foreclosed the claim.

In this action, the district court went on to hold that even if there was differential treatment of civil service employees, it was not violative of the equal protection clause because there exists a rational basis for the differential treatment, and the legislature is not required to treat all groups alike. It is unnecessary for this Court to reach this issue.

Although we refrain from holding today that patrolmen have a *per se* constitutional right to collective bargaining, we recognize that the district court, upon analysis of the protection required for the procedural rights discussed in Part I of this opinion, may conclude that collective bargaining is a necessary adjunct to such protection. That issue is not presently before us, of course, and we thus withhold further comment.

The decision of the district court is reversed and remanded for further proceedings consistent with this opinion.