NAPERVILLE POLICE UNION, LOCAL 2233, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Plaintiffs-Appellees, *v.* THE CITY OF NAPERVILLE, Defendant-Appellant.

Second District    No. 80-612

Opinion filed May 29, 1981.—Rehearing denied July 22, 1981.

Marvin J. Glink and Mary Denise Cahill, both of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellant.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from an action brought in the circuit court of Du Page County by plaintiffs, Naperville Police Union, Local 2233, American Federation of State, County and Municipal Employees, AFL-CIO (Union), seeking a declaration of the rights of the parties and an order directing defendant, City of Naperville (City), to negotiate with the Union over matters affecting the hours, wages and working conditions of the City patrolmen. The trial court issued a memorandum decision in favor of the Union and entered a permanent mandatory injunction compelling the City to recognize the Union as the exclusive bargaining agent for the police patrolmen and to negotiate in good faith concerning salaries, wages, hours and other conditions of employment. From that judgment the City brings this appeal.

The facts of this case are undisputed and were presented to the trial court by way of a stipulation. On November 1, 1971, the City, a home rule municipality, duly adopted Ordinance No. 394.71 entitled, "AN ORDINANCE PROVIDING FOR THE RECOGNITION OF EMPLOYEE ORGANIZATIONS," a comprehensive enactment providing for public employee organization and collective bargaining. Pursuant to the provisions of that ordinance, the Union was certified as the exclusive bargaining representative for the City patrolmen and negotiations were conducted and contracts entered into between the parties regarding hours, wages and working conditions subsequent to passage of Ordinance No. 394.71 through the City's 1977 fiscal year.

On January 18, 1977, the City enacted Ordinance No. 77—17, which repealed those sections of Ordinance No. 394.71 relating to public employee organization, certification and collective bargaining. Ordinance No. 77—17 provides in relevant part:

"WHEREAS, the City Council believes that no new collective negotiations with new bargaining units of employees is necessary, desirable, or in the best interests of the City especially when consideration is given to the costs and expense in dollars, efforts and management loss of productivity;

NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF NAPERVILLE, DuPAGE AND WILL COUNTIES, ILLINOIS, in the exercise of its home rule powers, as follows:

SECTION 1: That Sections 7.123 through 7.128, inclusive, of Article I, Personnal (sic), Principles and Policies, of Chapter 7, Other Provisions Relating to City Government, of the Municipal Code of Naperville of 1960, as amended, be and the same are

hereby repealed." Naperville, Ill., Ordinance 77—17 (Jan. 18, 1977).

Also, on January 18, 1977, the City adopted Resolution No. 77—3, which provides in pertinent part:

"WHEREAS, this City Council has by ordinance repealed Sections 7.123—7.128 of the City Code which prescribed certain procedures for the formal recognition of exclusive bargaining units of City employees and provided for formal collective negotiations; and

WHEREAS, the City Council believes that no new collective negotiations with new bargaining units of employees is necessary, desirable, or in the best interests of the City especially when consideration is given to the costs and expense in dollars, effort and management loss of productivity;

* * *

NOW, THEREFORE, BE IT RESOLVED THAT:

1) The City of Naperville will no longer formally recognize new exclusive employee bargaining representatives. Previously recognized bargaining representatives will continue to be recognized for already established and defined bargaining units." Naperville, Ill., Resolution 77—3 (Jan. 18, 1977).

Three days later, on January 21, 1977, the City and the Union entered into an agreement concerning, among other things, rates of pay, hours of employment and other conditions of employment. Article XXIII thereof provided that the agreement would be effective as of May 1, 1976, and would remain in full force and effect until April 30, 1977, but that the agreement:

"shall continue in effect from year to year thereafter unless notice of termination is given * * * by either party not less than sixty (60) nor more than ninety (90) days before the expiration date."

The agreement further provided that:

"Notwithstanding the foregoing, this Agreement shall remain in full force and effect after any expiration date while negotiations are continuing for a new contract between the parties."

On February 19, 1977, the Union sent a letter to the City indicating that the Union was electing to terminate the agreement pursuant to article XXIII thereof and desired to negotiate for a new contract. The parties conducted negotiations at nine negotiating sessions between May 19, 1977, and August 11, 1977. At the August 11, 1977, meeting, the Union cut off negotiations by declaring an impasse. Impasse procedures were implemented thereafter as provided by articles XXIII and XIV of the agreement. Pursuant to those provisions, the matter was referred for mediation

to the City Personnel Board and, having failed to resolve the dispute there, the issues were then submitted to the State of Illinois Mediation Service. Such procedures were exhausted in January 1978 without success.

On June 12, 1978, the Union sent a letter to the City requesting that the City reconvene contract negotiations, but the City declined that request. Thereafter, the Union sent a letter to the City Personnel Board charging the City with an unfair labor practice in violation of Ordinance No. 394.71. The Board, however, refused to conduct an independent investigation of the charge because of the fact that Ordinance No. 394.71 had been repealed by Ordinance No. 77—17. While refusing to negotiate further with the Union, the City has continued to recognize and negotiate with the International Brotherhood of Electrical Workers (IBEW).

On July 3, 1980, the trial judge issued a memorandum decision in which he concluded that "Resolution No. 77—3 bound the municipality to conduct itself in accord with the repealed Ordinance No. 394.17 [*sic*] insofar as the provisions thereof are applicable." Having so concluded, the court ordered the City to negotiate with the Union in good faith with respect to wages, hours of employment and other working conditions of the City's patrolmen. It is from this decision that the City appeals.

The City presents four issues for review:

1. Whether Resolution 77—3 amended or modified Ordinance 77—17 which expressly repealed the Collective Bargaining Ordinance 394.71;

2. Whether Resolution 77—3 revived the repealed Ordinance 394.71;

3. Whether the trial court erred in interpreting Resolution 77—3 as requiring the City of Naperville to continue recognition of and negotiations with the Police Union;

4. Whether there is any authority which requires the City of Naperville to bargain collectively with employee units.

■■ First of all, there can be little doubt that Resolution No. 77—3 did not have the effect of amending or modifying Ordinance No. 77—17, which expressly repealed Ordinance No. 394.71 relating to collective bargaining by City employees. An ordinance may be repealed, modified or amended only by municipal action of like dignity (*DuMond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 207 N.E.2d 320) and, therefore, may not be amended or modified by resolution (*Phillips Petroleum Co. v. City of Park Ridge* (1958), 16 Ill. App. 2d 555, 149 N.E.2d 344; *Cassidy v. Triebel* (1948), 337 Ill. App. 117, 85 N.E.2d 461) since a resolution is an act of lesser dignity than an ordinance. (*Illinois Municipal Retirement Fund v. City of Barry* (1977), 52 Ill. App. 3d 644, 367 N.E.2d 1048.) Even if the City had the requisite intent to amend Ordinance No. 77—17, which we

certainly are not convinced of, an attempt to do so by resolution would be ineffective.

■■ Secondly, it is clear that Resolution No. 77—3 could not have revived the repealed collective bargaining provisions of Ordinance No. 394.71, since "[t]he effect of an express repeal of an ordinance is to eliminate the ordinance and end all proceedings growing out of such ordinance as if it had never been passed, unless saved by a clause in the repealing ordinance." (*State National Bank v. Zoning Board of Appeals* (1979), 81 Ill. App. 3d 105, 107, 400 N.E.2d 433, 435; see also *City of Chicago v. Degitis* (1943), 383 Ill. 171, 48 N.E.2d 930.) Since there is no saving clause in Ordinance No. 77—17, Ordinance No. 394.71 must be deemed revoked in its entirety. Therefore, we conclude that the trial court erred in ruling that Resolution No. 77—3 bound the municipality to act in accordance with the repealed Ordinance No. 394.71 insofar as the provisions thereof were applicable.

Having so concluded, the focus of our inquiry must turn to the issue of whether Resolution No. 77—3 itself obligates the City to continue collective bargaining negotiations with the Union or whether there is some other authority which mandates such action on the part of the City. The crucial language of the resolution reads: "Previously recognized bargaining representatives will continue to be recognized for already established and defined bargaining units." While the Union's complaint and argument in the trial court seem to be based on the provisions of Ordinance No. 394.71, it now appears to have abandoned that approach and instead argues that, although Ordinance No. 394.71 has been repealed, Resolution No. 77—3 is consistent with some of the provisions of that ordinance in requiring the City to continue to negotiate in good faith with the Union. Specifically, the Union argues that the word "recognize" in Resolution No. 77—3 implies a duty or obligation on the part of the City to bargain or negotiate with the Union in good faith in an attempt to arrive at a contract. The City, on the other hand, contends that there is no authority for the Union's interpretation of the word "recognize" as including a duty to negotiate but that, even assuming that such a duty could be inferred from the language of the resolution, the City's obligation to bargain in good faith was intended to continue only during the life of existing contractual relationships; if a labor contract between a public employee union and the City terminates, the duty to bargain ceases to exist.

In construing municipal ordinances, the same rules which govern the construction of statutes are applied. (*City of East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 542, 229 N.E.2d 522; *State National Bank v. Zoning Board of Appeals* (1979), 81 Ill. App. 3d 105, 107, 400 N.E.2d 433, 435.) The intention of the lawmaking body as revealed by the

158

language used is a primary consideration. (*Highcrest Management Co. v. Village of Woodridge* (1978), 60 Ill. App. 3d 763, 765, 377 N.E.2d 315, 317.) The surrounding circumstances and conditions under which the ordinance was enacted are to be considered, as well as the purposes sought to be attained, in order to dispel uncertainty or ambiguity in its meaning. (*City of Des Plaines v. Chicago & North Western Ry. Co.* (1975), 30 Ill. App. 3d 944, 332 N.E.2d 596, *rev'd on other grounds* (1976), 65 Ill. 2d 1.) Obviously, the same rules of construction which govern statutes and ordinances are equally applicable to resolutions. However, such rules are easier stated than applied.

In the present case, it is difficult to ascertain the City's intentions from the language of the resolution, and the record is not developed sufficiently to enlighten this court as to the surrounding circumstances and conditions existent at the time the resolution was adopted. The critical words in Resolution No. 77—3, "recognize" and "already established and defined bargaining units," are not defined, nor are we aware of any well-established and commonly understood meaning ascribed to such words in this context in Illinois. Furthermore, contrary to the argument proffered by the Union, we do not believe that the duty to bargain in good faith is necessarily inherent in the word "recognize." No authority is cited by the Union for such a proposition, nor have we found any to exist in Illinois.

While not inconceivable, we consider it highly unlikely that the City would have followed the course it did if they intended to bind themselves to collective bargaining with the Union. Ordinance No. 77—17 expressly repealed the collective-bargaining provisions of Ordinance No. 394.71, yet there is nothing in the main body of the ordinance to reflect an intent to continue to be bound to collective bargaining with the Union; nor does the ambiguous language in the preamble ("Whereas, the City Council believes that no new collective negotiations with new bargaining units of employees is necessary * * *") convince us that such an intent existed. We are even less convinced that the City would reinstate collective bargaining rights in the Union that same day by way of a resolution. We have little doubt that, had the City intended to confer, or continue to extend, bargaining rights on the Union by Resolution No. 77—3, they would have done more than to simply state that "[p]reviously recognized bargaining representatives will continue to be recognized for already established and defined bargaining units." If the City intended to continue to extend bargaining rights to the Union, it could have done so by expressly providing that Ordinance No. 394.71 would not be repealed as to existing bargaining units.

■■ Absent a clear manifestation of intent by the city council to obligate themselves to future collective bargaining with the Union, we cannot accept the Union's argument that the City is bound by Resolution No.

77—3 to continue negotiating in good faith. Although not indisputable, we think it is more likely that the City was issuing a general statement of policy in Resolution No. 77—3 indicating an intent to continue negotiations with the Union as long as there was an existing contract between the two parties. Assuming that such an interpretation is correct, the City's duty to bargain with the Union ended after the last agreement between the parties expired following unsuccessful dispute settlement procedures. We conclude, therefore, that the City was not required to bargain with the Union by virtue of the resolution or the contract. Having chosen not to recognize the Union as the exclusive bargaining agent of the patrolmen on a voluntary basis, the City is under no enforceable legal duty to do so. *Rend Lake College Federation of Teachers Local 3708 v. Board of Community College District No. 521* (1980), 84 Ill. App. 3d 308, 310, 405 N.E.2d 364, 367; *Cook County Police Association v. City of Harvey* (1972), 8 Ill. App. 3d 147, 149, 289 N.E.2d 226.

■■ Finally, we must address the Union's argument that there was discriminatory treatment of the Union by the City which violates the equal protection rights of its members as guaranteed by the Fourteenth Amendment. The Union's argument is premised on the fact that both the Union and the IBEW, representing the City's electrical workers, were certified and recognized under Ordinance No. 394.71 prior to its repeal. Since the repeal, the City has continued formal recognition of the IBEW while ceasing to afford the Union similar treatment. Citing *Confederation of Police v. City of Chicago* (N.D. Ill. 1974), 382 F. Supp. 624, *aff'd* (7th Cir. 1977), 547 F.2d 375, the City argues that there was no discrimination. The City seeks to justify its treatment by arguing that the IBEW enjoyed continued recognition by virtue of renegotiated contracts.

Inasmuch as no fundamental right is involved, the question is whether negotiating with the IBEW and not with the police patrolmen is rationally or reasonably related to a legitimate State purpose. (*Confederation of Police v. City of Chicago* (N.D. Ill. 1974), 382 F. Supp. 624, 629.) The burden of proving discriminatory treatment which violates the equal protection clause of the Fourteenth Amendment rests upon the person challenging such action. (See *In re Estate of Karas* (1975), 61 Ill. 2d 40, 47-48, 329 N.E.2d 234, 238.) The record below does not provide us with any evidence to support the Union's contention in this respect other than the fact that the City continued to negotiate with the IBEW. We nevertheless are able to conclude that there was no violation of the equal protection clause by the City and that there was a rational basis for negotiating with the IBEW but not with the Union. The IBEW has continued to renew their contracts with the City, so they still have a contractual right to collective bargaining. When, if ever, their contract with the City expires, by termination or otherwise, as the Union's contract has, their right to

bargain with the City will likewise cease to exist. Until that time, however, they are in a distinctly different position than the Union and, therefore, may be treated differently by the City. There also is an obvious difference between the work performed by patrolmen and electrical workers. The nature of police work, being dangerous and important for the public welfare, makes rational, logical and necessary the decision to treat the police differently from other types of employees. *Confederation of Police v. City of Chicago* (N.D. Ill. 1974), 382 F. Supp. 624, 630.

For these reasons, the judgment of the circuit court is reversed.

Reversed.

SEIDENFELD, P. J., and NASH, J., concur.