365 F.2d 178
 METALEXPORT COMPANY, a national enterprise of Poland,
Plaintiff, Counter-Defendant, Appellee,
v.
GEN-O-RAL PROCESSING CORPORATION, an Illinois corporation,
Defendant, Counter& Cross-Claimant, Appellant, and Mario
Tanzi, doing business as Capital Equipment Company,
Defendant & Cross-Defendant, Appellee.
 No. 15534.
 United States Court of Appeals Seventh Circuit.
 July 29, 1966.
 
 Jack Edward Dwork, Harry G. Fins, Chicago, Ill., for appellant.
 Jay A. Lipe, Paul Noland, Chicago, Ill., for appellee, Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., of counsel.
 Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Gen-O-Ral Processing Corporation, an Illinois corporation, defendant, appeals from that portion of a judgment of the district court, sitting without a jury, which awarded $2,296.40 to Metalexport Company a national enterprise of Poland, plaintiff, and against said defendant.[1] Mario Tanzi, doing business as Capital Equipment Company, another defendant, did not appeal from that part of the judgment adverse to him.
 
 
 2
 On July 12, 1960, plaintiff entered into a consignment agreement with Gen-O-Ral. This agreement provided, inter alia, that plaintiff was to ship five machines to defendant on consignment, for which defendant was to pay for plaintiff $5,236.50 for customs duties on the machines. In the event that defendant failed to sell any of said machines, it was agreed that plaintiff would make refund therefor to defendant. In addition, it was provided:
 
 
 3
 '4. * * * (defendant) is hereby permitted to place the equipment * * * in the premises of CAPITAL EQUIPMENT COMPANY[2] * * *. Any one of said machines which had not been sold on or before July 1, 1961, shall be returned to the Consignor (plaintiff) on written demand, in good order and unused. However, the Consignee or its agent shall have the right and privilege to exhibit, offer for sale and sell the same for the account of METALEXPORT COMPANY for the respective amounts set forth opposite each invoice attached to Schedule A. It is the intention to preserve unimpaired the title of METALEXPORT COMPANY to said machinery. Consignee agrees that upon the sale of any one or all of said machines to segregate and deposit the proceeds thereof separately * * * (pay same to plaintiff) * * *.'
 
 
 4
 Although, on September 20, 1960, defendant Tanzi sold a milling machine for $11,000, which he received, he did not remit to plaintiff. This resulted on October 25, 1961, in plaintiff and Tanzi entering into a compromise agreement by which Tanzi was to pay plaintiff at the rate of $500 monthly in order to settle his obligations to plaintiff arising from said sale,[3] but he paid only $1000 thereon.
 
 
 5
 On October 26, 1961, plaintiff entered into a compromise agreement with defendant, which the district court found 'was not completely put into effect'. This agreement provided: (1) ownership of a high speed engine lathe was to pass from plaintiff to defendant as a refund to defendant for payment of the said customs duties; (2) defendant agreed not to undertake any action preventing plaintiff from removing the remaining three machines[4] belonging to plaintiff from the premises of Capital in which they were stored; and (3) the parties agreed to consider the consignment agreement of July 12, 1960, as cancelled after the execution of the engagements stipulated above in (1) and (2).
 
 
 6
 On January 24, 1963, Tanzi sold plaintiff's drilling machine for $8,000, $6,285 of which the district court found was converted by Tanzi. On May 22, 1963, defendant removed the remaining two[5] machines from Tanzi's premises to his own.
 
 
 7
 The district court made the following conclusions of law: Plaintiff was entitled to recover from defendant $6,285, which amount was based on the money that Tanzi had converted on January 24, 1963, from his sale of plaintiff's radial drilling machine. Defendant was entitled to recover from plaintiff $3,988.60, which amount was calculated by subtracting $5,236.50 (the value of the high speed engine lathe, whose ownership, the district court found, was transferred from plaintiff to defendant pursuant to the alleged compromise agreement of October 26, 1961) from $9,225.10 ($5,236.50 owing to defendant for customs duties paid by it for plaintiff pursuant to the consignment agreement of July 12, 1960, plus $3,988.60, owing to defendant on its counterclaims[6] for certain inoperable and defective machinery[7] purchased by it from plaintiff).
 
 
 8
 Defendant asserts herein that it is entitled to a judgment against plaintiff of $9,225.10. Defendant arrives at this figure, first, by implicitly arguing that conclusion of law No. 2, giving plaintiff a recovery against defendant of $6,285, is incorrect, because there was no evidence that Tanzi was defendant's agent, and, even assuming Tanzi was its agent, because the compromise agreement of October 25, 1961, between Tanzi and plaintiff, resulted in a novation and a discharge of defendant's liability to plaintiff on the five machines named in the July 12, 1960 consignment agreement. Thus, defendant argues that it could not be liable to plaintiff for Tanzi's January 24, 1963 conversion of plaintiff's radial drilling machine, and that plaintiff should look directly to Tanzi for recovery of said amount. Secondly, in arriving at said figure of $9,225.10, defendant contends that the alleged compromise agreement of October 26, 1961, was not put into partial effect, contrary to what the district court's finding of fact No. 7 indicates, and that therefore it should not have been complelled by the district court to accept title to the lathe in payment of the customs duties paid by defendant for plaintiff pursuant to the July 12, 1960 consignment agreement.
 
 
 9
 We believe that the record clearly shows that Tanzi was the agent for Gen-O-Ral, the consignee of the machines. We hold that when Tanzi sold the drilling machine and failed to turn over the proceeds, his rightful possession became a wrongful conversion, which ripened into a cause of action when plaintiff made an unsuccessful demand on Gen-O-Ral therefor. Gen-O-Ral was liable for the tortious acts of its agent.
 
 
 10
 It was the function of the trial court to determine the credibility of witnesses and the weight to be given to the testimony of each. In view thereof this court will not disturb the findings of the district court unless they are manifestly against the weight of the evidence. We determine that the findings of the district court are predication on the evidence and that its conclusions of law are correct.
 
 
 11
 We find no error committed by the trial court requiring a reversal of the judgment herein, which we affirm.
 
 
 12
 Judgment affirmed.
 
 
 
 [1]
 Unless otherwise indicated, the mention of 'defendant' in this opinion refers to Gen-O-Ral
 
 
 [2]
 The business premises of Mario Tanzi. In fact, said machines were placed in these premises
 
 
 [3]
 Defendant contends that this agreement was a novation, thereby discharging its obligations to plaintiff arising under the July 12, 1960 consignment agreement
 
 
 [4]
 Radial drilling machine, automatic screw machine and a horizontal turret lathe
 
 
 [5]
 Automatic screw machine and horizontal turret lathe
 
 
 [6]
 The district court, in conclusion of law No. 2, granted defendant a $3,988.60 recovery against plaintiff on the former's counterclaims
 
 
 [7]
 This defective machinery was not included in the five machines mentioned in the aforementioned consignment agreement of July 12, 1960