HIGHCREST MANAGEMENT COMPANY *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF WOODRIDGE, Defendant-Appellee.

Second District   No. 77-80

Opinion filed June 1, 1978.

Robert Marks and Erwin I. Kaplan, both of Marks, Marks & Kaplan, of Chicago, for appellants.

Donald W. Forester and Alfred P. Bianucci, both of Oak Brook, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs (hereinafter Highcrest) are the managers and owners, respectively of multifamily residential structures in the defendant village of Woodridge. Highcrest sued to recover alleged overcharges for sewer service in the amount of $25,000 which it had paid under protest. The motion of the village to dismiss brought under section 48(1)(i) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)) was granted, and the complaint was dismissed. Highcrest appeals.

In issue is the interpretation of an ordinance of the village which provides (with the italicized portion being directly involved):

"*Section 1.*

Upon consummation of the Purchase Agreement, the Village shall charge and collect thereafter a monthly fee for sewer service from each residential unit as follows:

> (a) For each single family residence and for each residential unit having an individual meter in a multi-family structure, the sum of Four Dollars and 75/100 ($4.75);
>
> (b) *Each commercial, institutional or multi-family structure where residential units are not separately metered and which are discharging non-industrial wastes only, * * * the sum of $4.75 or 75% of the monthly water bill, whichever is greater.*" (Emphasis added.) Ordinance 71—17, art. IV, §1.

The multiunit residential buildings in question concededly have no individual meters. Plaintiffs contend that the ordinance demonstrates a clear legislative intent to determine sewer fees by reference to structures as entireties and not by reference to individual users within those structures. They thus argue that the ordinance fixes the monthly sewer charge as the greater of the sum of $4.75 for the entire structure or 75 percent of the structure's monthly water bill. The village contends, however, that the monthly charge under the ordinance is the greater of the sum of $4.75 multiplied by the number of individual residential units within the structure, or 75 percent of the water bill for the entire structure. The trial court agreed with the latter interpretation.

■■ The rules which govern the construction of statutes apply to ordinances. (*City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967); *First National Bank & Trust Co. v. City of Rockford*, 47 Ill. App. 3d 131, 141 (1977).) The intention of the law-making body as revealed by the language used is a primary consideration. (37 Ill. 2d 537, 542; *Reitman v. Village of River Forest*, 9 Ill. 2d 448, 451 (1956).) There is no occasion for construction if the language is plain and unambiguous. (*Department of Public Works & Buildings v. Schon*, 42 Ill. 2d 537, 539 (1969).) A statute or ordinance must be construed "to give it efficient operation and effect as a whole." (*S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56, 65 (1972).) The enactment must receive a sensible construction in which the strict meaning of the words used is not as important as the sense in which the words are used. *Reitman v. Village of River Forest*, 9 Ill. 2d 448, 451 (1956).

Highcrest argues that the language of the ordinance is unambiguous in providing that it pay $4.75 or 75 percent of the monthly water bill for each structure, whichever is greater, and that therefore no room for statutory construction exists. It notes that in view of the rule that ordinary sentence construction should be applied (see *Burlington Northern, Inc. v.*

*Department of Revenue,* 32 Ill. App. 3d 166, 177 (1975)), there is no basis to separate the words "the sum of $4.75" from the words "or 75 percent of the monthly water bill," and to in effect insert language (*i.e.,* "multiplied by each individual unit within the building") which qualifies the $4.75 figure as applicable to an individual unit within the structure but which does not qualify or describe the latter phrase. It notes that "75 percent of the monthly water bill" cannot refer to the water bill for each residential unit in the building because the building has only one meter. Highcrest further argues that the intention in section 1 of article IV to charge on the basis of a single structure is made even more clear from a reading of article III of the ordinance which refers to water rates rather than sewer rates and provides. "In any case where residential units in a multi-family structure are served through a single meter, the rate blocks (gallons) and minimum bill * * * above, shall be multiplied by the number of residential units served through such meter" (Ordinance 71—17, art. III, §2), thus indicating, Highcrest argues, that the village knew how to use a clear phrase when it sought to charge on an individual unit basis. It further notes that other ordinances have established a minimum charge for multiple family structures, citing *McDonald Mobile Homes, Inc. v. Village of Swansea,* 56 Ill. App. 3d 759 (1977).

We conclude, however, that under applicable rules of construction the trial court did not err in interpreting the ordinance to require that the $4.75 monthly fee was intended to be assessed on a per unit basis with the further provision that 75 percent of the water bill for the entire structure, if greater, would be the applicable charge.

■■■ The language used in article III of the Ordinance with reference to water charges evinces an intent to treat multifamily structures as collections of individual units rather than as single entities. The introductory clause of section 1 of article IV of the Ordinance introduces an ambiguity into the meaning of clause (b) of article IV with which we are most directly concerned. The introduction speaks in terms of "residential units," whereas clause (b), which is modified by this introductory clause, speaks only in terms of "commercial, institutional or multi-family structure(s) where residential units are not separately metered * * *." The interpretation placed upon this equivocal language by the Woodridge Village officials charged with its enforcement has been contemporaneous and consistent over a long period of time. "The interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute." (*Youakim v. Miller,* 425 U.S. 231, 235, 47 L. Ed. 2d 701, 706, 96 S. Ct. 1399, 1402 (1976); *People ex rel. Watson v. House of Vision,* 59 Ill. 2d 508, 514-15 (1974); *First National Bank & Trust Co. v. City of Rockford,* 47 Ill. App. 3d 131, 142 (1977).) The interpretation suggests that the intent to treat multifamily

structures as collections of individual units expressed in article III with reference to water service fees was intended to be carried over into the section of the ordinance providing for fees for sewer service even though not clearly stated.[1]

Highcrest further argues that the interpretation placed upon the ordinance by the trial court would render the ordinance as to sewer service fees unconstitutional, discriminatory and void, relying on the familiar rule that a statute is to be construed so as to uphold its validity and constitutionality if reasonably possible, resolving any doubt in favor of an interpretation which would make the ordinace valid. (See *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 446 (1976).) Hillcrest argues that the construction of the ordinance by the trial court would make the statute invalid and that therefore this interpretation should not be approved. The gist of Hillcrest's argument is that the interpretation places a burden on the owners of multifamily structures with one common meter that is not placed on the owners of single-family residences, namely, the obligation to pay the village as a sewer fee 75 percent of the multifamily structure's bill if that sum is greater than $4.75 multiplied by the number of residential units in the structure. Hillcrest illustrates that, under the interpretation, an apartment house with individual meters would only have to pay the flat rate of $4.75 multiplied by the number of units, whereas an apartment house with only one meter would have to pay the greater of the sum of $4.75 multiplied by the number of units or 75 percent of the water bill for the entire structure and that this would amount to a surcharge.

We conclude that the argument is not persuasive. In matters affecting local economy only the "invidious discrimination, the wholly arbitrary act" will be declared unconstitutional as a denial of equal protection. (*City of New Orleans v. Dukes*, 427 U.S. 297, 303-04, 49 L. Ed. 2d 511, 517, 96 S. Ct. 2513, 2517 (1976)). In cases of exclusively economic regulation the courts almost without exception defer to legislative determination as to the desirability of particular statutory discriminations. (*City of New Orleans v. Dukes*, 427 U.S. 297, 303, 49 L. Ed. 2d 511, 516-17, 96 S. Ct. 2513, 2516 (1976).) Classifications may validly be made "with substantially less than mathematical exactitude." 96 S. Ct. at 2517.

■■ Here a rational basis for the complained of classification may be found. The village may have determined that it was countercost effective

---

[1] The village has also urged us to take judicial notice of an ordinance of Du Page County which establishes service charges to be paid by the village to the county for sewer treatment services as allegedly demonstrating the intention of the village to enact fees per "residential unit" rather than per structure". However, the ordinance is with reference to an agreement in which the village undertakes to pay the county $4 for each residential unit for both water and sewer services and not for sewer services alone. The county ordinance therefore is of no aid in the interpretation of the intended charges for sewer service alone in the village ordinance.

to determine for single-family residences or individually-metered apartments if 75 percent of the monthly water bill exceeds $4.75 but cost effective to make that determination for large apartment complexes with but a single water meter. Thus, the classification may be upheld as bearing a rational relationship to a legitimate legislative purpose. (*S. Bloom, Inc. v. Mahin*, 61 Ill. 2d 70, 76-77 (1975).) By way of dictum the Illinois Supreme Court in *Northern Illinois Water Corp. v. Commerce Com.*, 33 Ill. 2d 580, 585-86 (1965), stated:

> "The question of whether the block-rate system for separately metered apartments is discriminatory is not before us. That issue would involve factors of cost and economy to the utility in accounting, billing, collection, etc. * * *"

In the instant case different billing procedures for large apartment houses with but one meter as opposed to single family residences or individually-metered apartments may involve "factors of cost and economy," billing and collection which would sustain the reasonableness of a billing system which would result from the interpretation given to the ordinance below. In any event, it would appear that the plaintiffs have not met their burden of showing that the classification of water and sewer service users established by the ordinance as so interpreted is wholly arbitrary. Rather, the classification appears to have a rational foundation.

We affirm the judgment of the trial court.

Affirmed.

BOYLE and WOODWARD, JJ., concur.