ROBERT M. WOLTERS *et al.*, Plaintiffs-Appellants, *v.* J. THOMAS JOHN-SON, Director of Revenue, *et al.*, Defendants-Appellees.

First District (5th Division)  No. 82-0199

Opinion filed May 6, 1983.

Robert M. Wolters, of Chicago, for appellants, *pro se.*

Tyrone C. Fahner, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, Robert M. and Eleanor Lee Wolters, husband and wife, filed a complaint in the circuit court of Cook County pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) to obtain judicial review of a decision rendered by the Illinois Department of Revenue (Department), affirming the denial of refunds to plaintiffs as joint taxpayers for State income tax paid on money disbursed as alimony in tax years commencing after December 31, 1973, through December 31, 1976. The circuit court affirmed the Department's decision. Plaintiffs' timely appeal followed. On appeal, plaintiffs contend that: (1) the money disbursed as alimony was received by them as a nontaxable trust; (2) inclusion of alimony in both payor's (ex-husband) and payee's (ex-wife) taxable incomes constitutes double taxation; and (3) payment of State income tax on those earnings used to meet alimony obligations is inequitable. For the reasons that follow, we affirm the circuit court's decision.

Pursuant to the divorce settlement agreement entered into by and between plaintiff-husband and his former wife, Alice G. Wolters, dated May 15, 1973, plaintiff-husband agreed to make bimonthly payments of alimony and child support to his former wife. In tax years commencing after December 31, 1973, through December 31, 1976, plain-

tiffs deducted alimony paid to Alice Wolters from their joint State income tax returns. Each year, the Department refused to process the returns as filed and treated plaintiffs' alimony deduction as a mathematical error. As a result, plaintiffs filed claims for refund contending that, pursuant to section 2—203(a)(2)(I)[1] of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 1—101 *et seq.*) (the Income Tax Act), and article IX, section 3(a) of the Illinois Constitution, they had a right to deduct the husband's alimony payments from Illinois base income. The Department denied the claims for refund and plaintiffs' timely protests followed.

OPINION

The first issue before this court is whether the money disbursed as alimony was received by plaintiffs as trustees of a nontaxable trust or whether it was received by them as taxable income.

In support of their position that the money paid as alimony was actually the *res* of a nontaxable trust, plaintiffs cite *Hanley v. Kusper* (1975), 61 Ill. 2d 452, 337 N.E.2d 1, for the proposition that the creation of a trust to avoid income taxes is sanctioned by the Illinois Supreme Court. By relying on *Hanley*, plaintiffs have overlooked the fact that the existence of the trust itself must be established before the purpose of the trust becomes relevant. It is our opinion that plaintiffs have failed to establish this prerequisite.

It is unclear from the record whether plaintiffs were pleading the existence of an express trust[2] or an implied trust. Thus, we will address the requirements of each to the extent necessary. An express oral trust of personal property is valid if the acts or words relied on to create the trust are so unequivocal as to lead but to one conclusion. If the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an express oral trust. (*Price v. State* (1979), 79 Ill. App. 3d 143, 148-49, 398 N.E.2d 365.) In the pending case, plaintiffs present the following argument for the existence of an express oral trust:

"The decree of divorce between taxpayer, Robert M. Wolters, and his ex-wife required taxpayer to pay stated sums to his ex-

[1]Section 2—203(a)(2)(I) (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(a)(2)(I)) provides for the following modification in adjusted gross income:

"(I) An amount equal to all amounts included in such total which are exempt from taxation by this State either by reason of its Constitution or by reason of the Constitution, treaties or statutes of the United States."

[2]Because we do not find any evidence of a written trust agreement, we will confine our discussion to an express oral trust.

wife from money that taxpayer was to receive in the future. Such money was earmarked for the ex-wife by the court, and taxpayer had no beneficial interest whatsoever in it. It was therefore a trust fund, and not properly taxed as income by the Department of Revenue."

It is our opinion that the aforementioned argument consists of nothing more than a series of unsubstantiated conclusory statements and that the terms of the settlement agreement are readily capable of an alternative explanation. Although plaintiff-husband has a legal obligation to pay stated sums to his former wife as alimony and support, the agreement does not mandate that this obligation be met by future income. In fact, plaintiffs admit that the obligation to pay exists whether or not plaintiff-husband is receiving any income at all. Thus, the obligation can reasonably be met by drawing on accumulated savings, selling stock or other valuable property, procuring loans, or even by drawing on the income or savings of plaintiff-husband's current wife. Moreover, neither the divorce court nor plaintiffs established separate bank accounts or took any other action to "earmark" particular funds for payment as alimony. Thus, we find that the acts and words relied on by plaintiffs to create a trust do not unequivocally demonstrate the requisite intent.

■ Similarly, plaintiffs have also failed to establish the existence of an implied trust, either as a resulting trust or a constructive trust. By definition, a resulting trust is imposed by operation of law to effectuate the intent of the parties. (*In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 943, 441 N.E.2d 158.) As discussed, plaintiffs have not demonstrated that the requisite intent existed. Finally, a constructive trust arises when there is a breach of a fiduciary relationship or when fraud is proved. (*Williams v. Teachers Insurance & Annuity Association* (1973), 15 Ill. App. 3d 542, 546, 304 N.E.2d 656.) Clearly, neither element is at issue in the pending case.[3]

[3]We find plaintiffs' attempt to support their trust agreement by distinguishing between permanent alimony and temporary alimony ineffective. First, plaintiffs conclude, without legal support, that they are obligated to pay "permanent alimony." Second, because permanent alimony has been defined as a portion of a husband's estate (*Walter v. Walter* (1914), 189 Ill. App. 345, 348), plaintiffs conclude that it is not taxable because "[s]urely an estate is not taxable as current income." Again, plaintiffs offer no legal support for yet another legal conclusion. Finally, after informing the court that "income" and "estate" impose differing degrees of tax liability, plaintiffs state that "the 'estate' from which the ex-wife was to be paid could be nothing more than future 'income' to be received by the ex-husband." Thus, plaintiffs argue, future income should not be taxed as income because it is, in reality, part of the husband's estate which, in our case, has been put in trust.

■ Furthermore, even if all elements necessary to create a trust had been established by plaintiffs, the corpus of the trust would not have escaped taxation as income to plaintiffs. The rule that income is not taxable until realized has never meant that a taxpayer who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he did not actually receive the money himself. (*United States v. Kirby Lumber Co.* (1931), 284 U.S. 1, 76 L. Ed. 131, 52 S. Ct. 4 (taxpayer liable for income tax on earnings paid directly to his creditors); *Corliss v. Bowers* (1930), 281 U.S. 376, 74 L. Ed. 916, 50 S. Ct. 336 (taxpayer-settlor liable for income earned by a revocable trust even though income was paid directly to the beneficiaries).) In the landmark decision, *Helvering v. Horst* (1940), 311 U.S. 112, 85 L. Ed. 75, 61 S. Ct. 144, the United States Supreme Court expressed the underlying rationale behind *Kirby* and *Corliss*:

> "The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them.
>
> * * *
>
> The power to dispose of income is the equivalent of ownership of it." 311 U.S. 112, 117-18, 85 L. Ed. 75, 78-79, 61 S. Ct. 144, 147.

■ Thus, the key factors in the determination of income tax liability on earnings are control over the money and readily realizable economic benefit derived from that control. (*Rutkin v. United States* (1952), 343 U.S. 130, 137, 96 L. Ed. 833, 838, 72 S. Ct. 571, 575.) In the case at bar, plaintiffs clearly had control over the distribution of their earnings. Under their direction, a portion of their earnings was paid to Alice Wolters. Although plaintiff-husband was legally obligated to make those payments, the choice was still his. He alone exercised control over his earnings and derived the immediate benefit of not being penalized for failure to meet that obligation. In that respect, the alimony obligation is no different than any other contractual obligation. For example, when a mortgage payment is automatically paid to the mortgagor every month out of funds in the mortgagee's bank account, those earnings used to pay the mortgage do not escape income tax liability to the mortgagee. The mortgagee may not have actually seen the funds, he may not even have written the mortgage check, but he does have ultimate control over the funds and could stop making mortgage payments any time. Accordingly, we conclude that be-

cause plaintiffs had control over their earnings and derived an economic benefit from that control, their earnings were taxable as realized income.

■ In the alternative, plaintiffs argue that if the money paid by them as alimony is considered to be income, it is not properly taxable as income to both plaintiff-husband and his former wife because to do so would result in double taxation, which is expressly prohibited by article IX, section 3(a) of the Illinois Constitution.[4] In particular, plaintiffs focus on the word "individuals" as it appears in section 3(a) and argue that it refers to plaintiff-husband and his former wife collectively, not singly. Therefore, imposition of an income tax on each of them for the selfsame income (alimony) is double taxation on individuals.

It is a well-established rule of construction that words in a statute may be defined by common usage, by previous judicial construction, and by legislative intent. (*People v. Williams* (1967), 79 Ill. App. 2d 56, 59-60, 222 N.E.2d 915.) However, the controlling element must be the meaning intended by the lawmakers. (*Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489, 494, 140 N.E.2d 687.) Further, once the Illinois Supreme Court has construed an act of the legislature, that construction becomes, in effect, a part of that law and any change in the construction is a matter for the legislature. *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456, 283 N.E.2d 465.

In the pending case, we find evidence of legislative intent as well as prior judicial construction determinative of the meaning of "individuals" as it appears in article IX, section 3(a) of the Illinois Constitution. In *Lake Shore Auto Parts Co. v. Korzen* (1971), 49 Ill. 2d 137, 273 N.E.2d 592, *rev'd on other grounds sub. nom Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001, the Illinois Supreme Court addressed the issues of construction and validity of article IX—A of the constitution, which abolished the personal property tax by valuation levied against individuals. In construing the phrase "as to individuals," the supreme court adopted the meaning set forth in Senate Joint Resolution No. 67, which stated:

> "SENATE JOINT RESOLUTION NO. 67 RESOLVED BY THE SENATE OF THE SEVENTY-SIXTH GENERAL AS-

---

[4]Article IX, section 3(a) of the Illinois Constitution states in pertinent part:

"A tax on or measured by income shall be at a non-graduated rate. At any one time there may be no more than one such tax imposed by the State for State purposes on individuals ***.""

SEMBLY OF THE STATE OF ILLINOIS, THE HOUSE OF REPRESENTATIVES CONCURRING HEREIN, that, in adopting Joint Resolution No. 30, which submits to the electors of this State a constitutional amendment prohibiting the taxation of personal property by valuation as to individuals, it was the intention of this General Assembly to abolish the ad valorem taxation of personal property owned by a natural person or by two or more natural persons, and that, by the use of the phrase 'as to individuals,' this General Assembly intended to mean a natural person, or two or more natural persons as joint tenants or tenants in common." 49 Ill. 2d 137, 140.

While we recognize that article IX—A concerned *ad valorem* taxation of personal property instead of income tax, we find the legislature's intent that "individuals" refers to one natural person or two or more natural persons with joint legal interests and liabilities applicable to the construction of the term in article IX, section 3(a). Under the law, there are certain transactions by which the obligations and privileges of two or more single persons merge into one collective whole, resulting in joint interests and liabilities. Joint tenancy is, of course, one such transaction and joint tax returns are another. In both, the individuals comprising the joint relationship take on the liabilities of the whole. By contrast, two or more natural persons who have not been legally "joined" remain singly obligated. In the case at bar, plaintiff-husband and his former wife severed their joint relationship through divorce, and, therefore, are to be treated as individual natural persons, with separate and distinct obligations under the law. They are no longer a collective unit as plaintiffs would have us believe.

In making our determination to adopt the *Lake Shore* court's construction of "individuals," we rely on several presumptions which historically have been used by the judiciary as aids in construction: (1) the legislature intended all provisions of a particular law to be construed as a whole (see *Highcrest Management Co. v. Village of Woodridge* (1978), 60 Ill. App. 3d 763, 766-67, 377 N.E.2d 315); (2) the several provisions of a law are to be consistent and harmonious (*People ex rel. Community High School District No. 231 v. Hupe* (1954), 2 Ill. 2d 434, 448, 118 N.E.2d 328); (3) the legislature intended to enact an effective body of law (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 117, 390 N.E.2d 835); and (4) the legislature did not intend to enact a law which has unjust or absurd consequences (*People v. Bournes* (1977), 55 Ill. App. 3d 237, 240, 370 N.E.2d 1230).

First, presuming that the legislature intended the constitution to

be read as a whole and that all parts thereof are to be harmonious, we find that the legislature's expressly stated meaning for the commonly used term, "individuals" as it appeared in article IX—A must be applied to all provisions of the constitution. Thus, the term logically and appropriately means a single natural person or two or more natural persons with joint interests and liabilities.

Second, presuming that the legislature intended to enact an effective law, it would not have intended plaintiffs' literal meaning of "individuals" as it appears in the constitutional provision which serves as the Income Tax Act's enabling clause. For example, section 2—201(a) of the Income Tax Act states, in part, "A tax measured by net income is hereby imposed on every individual *** for each taxable year *** on the privilege of earning or receiving income in or as a resident of this State." (Ill. Rev. Stat. 1979, ch. 120, par. 2—201(a).) Pursuant to the definition of "income" set forth by the United States Supreme Court in *Helvering v. Horst* (1940), 311 U.S. 112, 117-18, 85 L. Ed. 75, 79, 61 S. Ct. 144, 147, the money received by plaintiff-husband and then paid to his former wife as alimony was income to both recipients, individually. Once alimony is classified as income, it falls within the scope of section 2—201(a) of the Income Tax Act and is taxable to "every individual" who receives it. The same dollars that are received as income to one individual and taxed as income do not escape further taxation when those same dollars again represent income to a subsequent individual. (See *Welch v. Henry* (1938), 305 U.S. 134, 83 L. Ed. 87, 59 S. Ct. 121 (the receipt of dividends by a corporation is an event which may constitutionally be taxed even though the corporate income which is their source has also been taxed).) As the foregoing illustrates, plaintiffs' interpretation of "individuals" as used in the constitution's enabling clause would create gross ambiguity and uncertainty in the Income Tax Act. Moreover, plaintiffs' literal interpretation is directly contradictory to the general definitional provisions of the Income Tax Act, creating even further ambiguity. For example, section 15—1501(b)(1)(B) of the Income Tax Act states, in pertinent part:

> "(b) Other definitions. (1) Words denoting number, gender, and so forth, when used in this Act, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof:
> * * *
>
> (B) Words importing the plural include the singular; ***." Ill. Rev. Stat. 1979, ch. 120, par. 15—1501(b)(1)(B).

Finally, we presume that the legislature did not intend to enact a

law which had unjust or absurd consequences. In this regard, we firmly believe that to adopt plaintiffs' interpretation would result in an absurd and inequitable construction. For example, the sentence upon which plaintiffs focus also refers to corporations (plural in the statute). Thus, adopting plaintiffs' rationale, if corporation A uses its taxable income to pay a debt owed to corporation B, the money received by corporation B cannot be taxed as income because it was already taxed as income to corporation A. Or, considered that the money paid to an individual's doctor, lawyer, etc., from that individual's income is not taxable to those recipients because it has already been taxed as income to the payor. Without question, such consequences can be characterized as unjust and absurd. Accordingly, we hold that the amount paid by plaintiff-husband and received by his former wife as alimony was properly taxable as income to each individual.

■ We next address plaintiffs' contention that it is unfair to assess an income tax on money that simply passes through their hands. In this regard, plaintiffs further argue that money paid as alimony is not now taxed as income on State income tax forms and never should have been. Plaintiffs admit, however, that this change had nothing to do with a change in Illinois tax law. Rather, the mainstay of plaintiffs' argument is the 1977 amendment to the Federal income tax forms (Pub. L. 94—455), which altered the computation of adjusted gross income for Federal tax purposes. Prior to 1977, alimony was an itemized deduction from adjusted gross income on Federal tax forms. For tax years commencing after December 31, 1976, alimony is a deduction from gross income. This change in Federal tax computation directly affected the State tax liability of Illinois taxpayers for two reasons: (1) adjusted gross income as it appears on Federal tax forms is the starting point upon which Illinois tax liability is computed, and (2) the Income Tax Act does not contain a deduction for alimony payments. Thus, prior to 1977, alimony was included in taxable income for Illinois income tax purposes even though it was not so included for Federal income tax purposes.

It is axiomatic that deductions and exemptions are privileges created by statute as a matter of legislative grace (*Balla v. Department of Revenue* (1981), 96 Ill. App. 3d 293, 295, 421 N.E.2d 236), and taxpayers are not entitled to deductions unless clearly allowed by statute. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 513, 410 N.E.2d 828.) Moreover, to the extent that federally allowed deductions enter into the computation of State tax liability, they are relevant under the Income Tax Act. However, this interrelationship does not create a

parallel set of Illinois deductions. 81 Ill. 2d 502, 510.

For these reasons, we concur with the often-cited legal principle that whether or not an exemption is to be permitted is a matter for legislative consideration, not judicial determination. (*Kawitt v. Mahin* (1971), 49 Ill. 2d 73, 77, 271 N.E.2d 35.) Accordingly, because the Income Tax Act did not provide for a deduction of alimony payments from income during the years in question, we affirm the order of the circuit court of Cook County.

Affirmed.

LORENZ and MEJDA, JJ., concur.