Herbert L. **EGGERT,**
**Plaintiff–Appellant,**

v.

Robert **WEISZ,** David **Blair** and Mary Anne **Foran,** Defendants–Appellees.

No. 87–1062.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1987.
Decided Feb. 17, 1988.

---

Margaret M. Fahrenbach, Beeler Schad & Diamond, Chicago, Ill., for plaintiff-appellant.

Herbert M. Levin, Levin & Assoc., Clifford A. Harstad, Clifford A. Harstad, Ltd., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, Herbert Eggert, brought this action in federal court based on diversity of citizenship among the parties, the amount in controversy exceeding $10,000, 28 U.S.C. § 1332, to recover the proceeds from the sale of his stamp collection by Bob Weisz Stamps, Inc. (Bob Weisz Stamps). Because Bob Weisz Stamps no longer exists, Eggert has sued defendants Robert Weisz, David Blair, and Mary Anne Foran personally, asserting that they are liable for their roles in the alleged conversion of the proceeds by Bob Weisz Stamps. At trial, the district judge directed verdicts in favor of defendants Blair and Foran at the close of all the evidence. The jury then found defendant Weisz liable for conversion, but the judge granted Weisz judgment notwithstanding the verdict. Eggert now appeals the trial judge's rulings with respect to all three defendants.

## I. FACTUAL BACKGROUND

Because Eggert appeals from two directed verdicts and a judgment notwithstanding the verdict in favor of defendants, we view the facts of the case in the light most favorable to him. *Webb v. City of Chester*, 813 F.2d 824, 828 (7th Cir.1987).

In fifty years of collecting and occasionally dealing in stamps and other philatelic materials, Eggert accumulated a large collection emphasizing airmail stamps. In late 1974 or early 1975, he contemplated selling his collection and contacted Weisz for that purpose. Weisz was then president and majority shareholder of Bob Weisz Stamps. Between October 1975 and February 1977, Eggert consigned his entire collection, bit by bit, to Bob Weisz Stamps. Bob Weisz Stamps then sold Eggert's materials at its various auctions.

Whenever Bob Weisz Stamps conducted an auction, the company deposited all sale proceeds in its general corporate bank account. The proceeds were not segregated from other corporate funds. Three experts testified that this procedure was customary in the stamp auction business and that segregation of proceeds in a separate account would be impractical. Once the auction company received its payments, performed bookkeeping services, and finished other post-sale work, it would distribute the proceeds to its consignors.

Sometime in March or early April 1977, Eggert and Weisz had a conversation that is now the focus of this case. By then, Bob Weisz Stamps had sold much of Eggert's collection, but had not yet paid him in full. Eggert contacted Weisz and told Weisz that he did not need his money then, but wanted Weisz to hold the money for later payment. Weisz and Eggert now disagree sharply regarding the impact of their conversation. Eggert testified that he asked Weisz at least three times to hold the money in trust and that he offered to pay any costs of establishing the trust. Eggert testified that Weisz "didn't make any comment whether he would or whether he wouldn't." Weisz, in contrast, testified that Eggert loaned the money to Bob Weisz Stamps and that Eggert never mentioned creating a trust. Each vigorously denies the other's version of their conversation.

On April 26, 1977, Weisz sent Eggert a short letter. It stated:

Dear Herb:

This letter is to inform you that you have on deposit with us $14,060.80 and drawing 7½% interest as of Jan. 1, 1977. You may request this money at any time with 60 days notice.

Cordially,

(signed) Bob Weisz

BOB WEISZ

Both Weisz and Eggert claim that the letter is consistent with their respective versions of the transaction. Eggert claims that the letter's reference to money "on deposit" means that the money would be segregated from general corporate funds, or at least that Bob Weisz Stamps agreed to maintain sufficient liquid assets to pay Eggert in full within sixty days of his request. Weisz, on the other hand, insists that the letter expresses a debtor-creditor relationship similar to the relationship created by a bank deposit. Neither Weisz nor Eggert at any time later attempted to clarify their relationship.

In July 1977, Weisz sold fifty percent of Bob Weisz Stamps to David Blair. In January 1978, Weisz sold Blair the remaining fifty percent of the business. Blair renamed the company "Continental Auctions, Inc." (Continental), and he and Foran were officers of the renamed company. When Weisz sold Bob Weisz Stamps to Blair, Weisz characterized the Eggert transaction as a loan. In June 1978, Blair found that he could not determine precisely how much Continental owed to Eggert. Blair then contacted Eggert and they agreed that Continental then owed Eggert $20,327.60; the increase was due to the sale of more of Eggert's collection. Although Blair testified that he described the transaction to Eggert as a loan, Eggert also denied this version of that conversation.

Both before and after Weisz sold the company to Blair, the corporation treated Eggert's money as a loan. The money was deposited in the company's general corporate account and was used to pay general corporate debts. Beginning in early 1978, Eggert made several requests for payment.

Continental made some payments to him, but was unable to meet all of Eggert's requests. In February 1979, Blair proposed that Continental try to pay Eggert five hundred dollars per month. Continental made only two payments pursuant to that proposal. On December 1, 1979, the Illinois Secretary of State dissolved Continental for failure to pay franchise taxes. Finally, by August 1980, Continental ceased doing business.

## II. STANDARD OF REVIEW

The standard under which we review the district court's decision to enter a directed verdict is the same as the standard used to evaluate a judgment notwithstanding the verdict, and is the same on appeal as it is in the trial court. In a diversity case, we apply the standard of the forum state. *Davlan v. Otis Elevator Co.*, 816 F.2d 287, 289 (7th Cir.1987); *Bishop v. Firestone Tire & Rubber Co.*, 814 F.2d 437, 439 (7th Cir.1987). We undertake this review without judging the credibility of witnesses or reweighing the evidence except to the extent required to determine whether the evidence is substantial. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 15 (7th Cir.1987). "[A] mere scintilla of evidence will not suffice." *La Montagne v. American Convenience Prods.*, 750 F.2d 1405, 1410 (7th Cir.1984). According to Illinois law,[1] "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & E. R.R.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967). With this in mind, we turn to our discussion of the issues.

## III. DISCUSSION

Plaintiff Eggert urges this court to reverse the judgments of the district court.

---

1. The parties have treated Illinois law as the governing law in this case, both before the district court and on appeal. We need not examine the choice-of-law question further. *See, e.g.,*

*City of Clinton v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987); *Mucha v. King,* 792 F.2d 602, 604 (7th Cir.1986); *Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 531 (7th Cir.1985).

Eggert argues that Weisz, acting for Bob Weisz Stamps, converted the proceeds of the sale of Eggert's stamp collection. To establish a cause of action for conversion under Illinois law a plaintiff must show "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *de St. Aubin v. Johnson*, 151 Ill.App.3d 184, 188, 104 Ill.Dec. 97, 101, 502 N.E.2d 360, 364 (1st Dist.1986). Eggert asserts that Blair and Foran are liable for the alleged conversion because they actively participated by using the proceeds to pay Continental's general corporate debts.

Generally, if a consignee fails to return the proceeds of the sale of consigned goods to the consignor, the consignor may sue the consignee for conversion of the proceeds. *See Metalexport Co. v. Gen–O–Ral Processing Corp.*, 365 F.2d 178, 180 (7th Cir. 1966). Moreover, corporate officers and directors may be held liable for conversions by the corporation if they have actively participated therein. *National Acceptance Co. v. Pintura Corp.*, 94 Ill.App.3d 703, 706–07, 50 Ill.Dec. 120, 122–23, 418 N.E.2d 1114, 1116–17 (2d Dist.1981). Eggert cannot establish a cause of action for conversion, however, because Illinois law limits the circumstances in which a plaintiff may maintain an action for the conversion of money.

> [T]he subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.

*In re Thebus*, 108 Ill.2d 255, 260, 91 Ill.Dec. 623, 625, 483 N.E.2d 1258, 1260 (1985); *see also Mid–America Fire & Marine Ins. Co. v. Middleton*, 127 Ill.App.3d 887, 892–93, 82 Ill.Dec. 555, 558–59, 468 N.E.2d 1335, 1338–39 (4th Dist.1984).

Eggert cannot identify the money owed him as a specific chattel. He attempts to do so by characterizing it as the subject of an unexecuted trust. He argues that "Weisz undertook the fiduciary obligation to hold the funds until a formal declaration of trust could be prepared by a third person." Both parties agree that Bob Weisz Stamps did not segregate auction proceeds and that this practice was consistent with industry custom. There is no express trust.

The law can sometimes impose a trust where none exists to effectuate the parties' intent. This device is known as a resulting trust. The plaintiff must demonstrate the requisite intent to create a trust through "clear and convincing evidence" that is "unequivocal both as to its existence and to its terms and conditions." *In re Estate of Wilkening*, 109 Ill.App.3d 934, 941, 65 Ill. Dec. 366, 371–72, 441 N.E.2d 158, 163–64 (1st Dist.1982); *Wolters v. Johnson*, 114 Ill.App.3d 546, 548, 70 Ill.Dec. 342, 344, 449 N.E.2d 216, 218 (1st Dist. 1983). Eggert argues that the reference in the April 26, 1977 letter to money "on deposit" constitutes a promise to segregate the funds, but, as the district court points out, that language "can instead be as easily read as stating that the proceeds of the stamp sales were being used by Bob Weisz Stamps, Inc., for its own purposes." *Eggert v. Continental Auctions, Inc.*, No. 81 C 6637, slip op. (N.D.Ill. Dec. 10, 1986). Furthermore, even Eggert does not claim that Weisz explicitly agreed to hold the proceeds in trust. As we mentioned earlier, Eggert testified that Weisz "didn't make any comment whether he would or whether he wouldn't" establish a trust. The evidence thus falls far short of the level required to prove a resulting trust.

Similarly, Eggert may not rely on the fiction of the constructive trust to segregate his funds from defendants' other funds. "A constructive trust is one raised by operation of law and imposed by a court of equity where the legal title to money or property is obtained by a person in viola-

tion of some duty owing to him who is equitably entitled thereto." *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 132 Ill.App.3d 655, 660, 87 Ill.Dec. 798, 803, 477 N.E.2d 1326, 1331 (1st Dist.1985). Constructive trusts generally are imposed in cases of actual fraud or where there has been abuse of a fiduciary relationship. *Taino v. Sanchez*, 147 Ill.App.3d 871, 874, 101 Ill.Dec. 247, 250, 498 N.E.2d 571, 574 (1st Dist.1986). Eggert does not allege actual fraud. He does suggest that a fiduciary relationship existed between Eggert and Weisz. The proof of such a relationship "requires a showing that one party has reposed trust and confidence in another who thereby gains an influence and superiority over the other." *Id.* Eggert asserts that he trusted Weisz "implicitly," and we take him at his word; the record, however, is devoid of any evidence that Weisz thereby gained any "influence and superiority" over Eggert. Eggert simply consigned his stamp collection to the best dealer in his estimation. There is nothing in the record that demonstrates a relationship closer than that of a consignor and his consignee. There thus is no basis for the imposition of a constructive trust to correct an alleged breach of fiduciary duty.

Eggert cannot identify the money owed to him through the imposition of a trust. "Thus plaintiff had no right to a specific fund or specific money in coin or bills. [His] right was only to an indeterminate sum." *Mid-America Fire & Marine Ins. Co.*, 127 Ill.App.3d at 892, 82 Ill.Dec. at 559, 468 N.E.2d at 1339. Therefore, Bob Weisz Stamps' liability is for a debt rather than a conversion. *Id.* at 892–93, 82 Ill. Dec. at 558–59, 468 N.E.2d at 1338–39.

## IV. CONCLUSION

In sum, the money held by Bob Weisz Stamps for Eggert was not a specific and identifiable fund which could be converted. Without a conversion, there is no basis for holding Weisz, Blair, or Foran liable for the corporate obligation. Therefore, the district court's decisions granting judgment notwithstanding the verdict in favor of Weisz and directing verdicts in favor of Blair and Foran are

AFFIRMED.