In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3216

Mary E. Scott, Executor of the Estate
of Lucille M. Horstmeier, Deceased,

Petitioner-Appellant,

v.

Commissioner of Internal Revenue,

Respondent-Appellee.


Appeal from the United States Tax Court.
No. 19908-96--Joseph H. Gale, Judge.


Argued April 3, 2000--Decided September 8, 2000


Before Flaum, Chief Judge, and Bauer and Williams, Circuit Judges.

Williams, Circuit Judge.  The decedent, Lucille M. Horstmeier and petitioner Mary E. Scott lived together as a couple from 1974 to 1993. Throughout their relationship, Scott handled household maintenance and Horstmeier worked as a successful business owner, providing significant financial support to Scott. At issue in this appeal is the ownership of the Glenview, Illinois, home where the two lived but that Horstmeier alone purchased.

When Horstmeier died, Scott was appointed executor of Horstmeier's estate. In filing taxes for the estate, Scott included only 50 percent of the Glenview property's value and deducted only 50 percent of the mortgage interest, claiming that she personally had a resulting trust in the property that gave her a 50 percent ownership stake. The IRS disagreed and found that Horstmeier owned 100 percent of the property at the time of her death and, consequently, ruled that 100 percent of the property's value should have been included in the estate and 100 percent of the interest should have been deducted. Scott then took the matter to federal tax court. The tax court found that Scott presented insufficient evidence to prove that a resulting trust existed at the time of Horstmeier's death and agreed with the IRS's tax deficiency determination. Scott now

appeals. Because we find that the tax court's findings were not clearly erroneous, we affirm.

I

During the nearly 20 years that Horstmeier and Scott lived together, they shared three different homes. First, they lived in a Skokie condominium, which Horstmeier purchased and held in her name. Next, they moved to the Glenview home at issue here. To purchase this home, Horstmeier put $50,000 down and took out a mortgage for $55,000 in her name alone. Scott's name does not show up on any documents relating to this property. The two lived in the Glenview home until Horstmeier's death on January 25, 1993. During that time, as in the Skokie home, Scott did all the housework, performed household maintenance, and managed the couple's finances. Horstmeier deducted 100 percent of the mortgage interest and real estate taxes from the Glenview home on her own federal taxes from 1975 to 1992.

According to Scott, the two agreed that Horstmeier would serve as the nominee for the couple as joint owners of both the Skokie and Glenview homes. They did this because Horstmeier was a prominent business person in the Chicago community, and at that time, their same-sex relationship would have been condemned and could have caused controversy. At the time that the Glenview home was purchased, Scott had no assets to contribute to the purchase and had no regular source of income. She received some support from her parents and took a few low-paying jobs from time to time. In 1979, Scott began working as a full-time employee at the school that Horstmeier managed. Scott initially earned about $200 per week and eventually made about $21,000 per year. Still, the record contains no evidence that Scott ever made any mortgage payments to the bank or cash payments to Horstmeier specifically for her share of the down payment on the Glenview home. In fact, at one point, Horstmeier took out a second mortgage on the Glenview home in order to get money for her business. Scott objected, but Horstmeier took the loan out anyway.

The couple purchased a third home in Wisconsin in 1979. This time, both Horstmeier and Scott contributed to the down payment of approximately $4000, and originally, the property was titled in both their names. After Scott made all 36 monthly mortgage payments, she ultimately took title to the property in her name alone.

When Horstmeier died in early 1993, Scott was appointed the executor of Horstmeier's estate. In her will, Horstmeier did not provide instructions concerning the Glenview home. Instead, the

property passed to Scott as the residuary beneficiary of a trust to which Horstmeier bequeathed her assets that were not required for estate administration.

In 1993, Scott filed a claim in probate court seeking a 50 percent tenancy-in-common interest in the Glenview home. She filed this claim in response to an investigation into Horstmeier's business's finances. Scott was concerned that the Glenview property might be vulnerable to attack by creditors. In support of her claim, Scott maintained that (1) she and Horstmeier agreed they would share expenses concerning the home and (2) Horstmeier required Scott to pay $3000 per year until she paid a total of $25,000, which equaled one-half the down payment made when the home was originally purchased. In addition, Scott and Horstmeier shared expenses as agreed, but Horstmeier actually forgave the required payment and made an annual $3000 gift to Scott. The court approved Scott's claim without reaching the merits or the underlying facts of the claim.

When she filed the federal taxes for the Horstmeier estate, Scott included only 50 percent of the value of the Glenview home in the gross estate and deducted only 50 percent of the remaining note balance. She did so on the theory that she personally owned 50 percent of the home, while the Horstmeier estate owned the other 50 percent. The IRS determined otherwise and concluded that Horstmeier alone owned the home. As a result, the IRS found that 100 percent of the value of the home should have been included and 100 percent of the mortgage note balance should have been deducted on the Horstmeier estate tax return. The result was a $157,404 tax deficiency.

As executor of the Horstmeier estate, Scott challenged the IRS ruling in tax court. The court agreed with the IRS. It ruled that Scott failed to present sufficient evidence that a resulting trust had been created. Specifically, the court concluded that there was not enough evidence to show that an agreement existed between Scott and Horstmeier for the joint purchase of the Glenview home. The judge cited a number of issues as problematic: (1) the lack of clarity concerning how Scott's share of the down payment was to be repaid; (2) the securing of a second mortgage on the property by Horstmeier, over Scott's disapproval; and (3) the couple's willingness to take joint title to the Wisconsin property when both contributed to the initial down payment. The judge concluded that "[t]he infirmities in petitioner's theory . . . are cumulative and, considered together, cast doubt on the factual support for a resulting trust in this case."

II

We review the tax court's judgment using the same standards that apply when examining a district court's decisions in a civil bench trial. See 26 U.S.C. sec. 7482(a)(1). Therefore, we review the tax court's findings of fact for clear error. See Kikalos v. Commissioner, 190 F.3d 791, 793 (7th Cir. 1999). Scott's principal argument is that the tax court erred in concluding that she failed to prove she had a 50 percent interest in the Glenview home, obtained through a resulting trust. To decide whether a resulting trust arose, we apply the law of the State of Illinois. See Estate of Young v. Commissioner, 110 T.C. 297, 300 (1998) (citing Fernandez v. Wiener, 326 U.S. 340, 355-57 (1945)) ("[W]hat constitutes an interest in property held by a person within a State is a matter of State law.").

Under Illinois law, a court may impose a trust when none exists to effectuate the parties' intent. See In re Estate of Wilson, 410 N.E.2d 23, 26 (Ill. 1980). Accordingly, a resulting trust is established when one person furnishes consideration for property and title is taken in the name of someone else with the intent that the person furnishing consideration retains beneficial ownership of the property. The pivotal question in determining whether a resulting trust has been created is "whether the nominal purchaser intended the actual payor to have an ownership interest in the good." See American Nat'l Bank & Trust Co. of Rockford, Ill. v. United States, 832 F.2d 1032, 1035 (7th Cir. 1987) (citing Wilson, 410 N.E.2d at 26-27; In re Estate of McGee, 383 N.E.2d 1012, 1015 (Ill. App. Ct. 1978)). Because Scott is rebutting recorded legal title, she "must demonstrate the requisite intent to create a [resulting] trust through 'clear and convincing evidence' that is 'unequivocal both as to its existence and to its terms and conditions.'" Eggert v. Weisz, 839 F.2d 1261, 1264 (7th Cir. 1988) (citing Wolters v. Johnson, 449 N.E.2d 216, 218 (Ill. App. Ct. 1983); In re Estate of Wilkening, 441 N.E.2d 158, 163-64 (Ill. App. Ct. 1982)); American Nat'l Bank, 832 F.2d at 1035 (citing Wilson, 410 N.E.2d at 27). Furthermore, she must present facts that suggest a resulting trust is the only reasonable remedy. "If the evidence is doubtful or capable of reasonable explanation upon any theory other than the existence of a trust, it is insufficient." Kohlhaas v. Smith, 97 N.E.2d 774, 776 (Ill. 1951).

Once we review the facts in light of this high burden of proof and the required deferential standard of review, it becomes clear that Scott

loses. Scott claims that at the time Horstmeier paid for the Glenview home, they agreed that Scott would repay her half of the down payment in installments and would contribute her share of the monthly mortgage payments and property taxes by providing all services required for upkeep of the home. In our view, Scott failed to establish that (1) Horstmeier actually expected consideration in return for Scott's share of the Glenview home; (2) she actually paid the consideration Horstmeier allegedly expected; and (3) she and Horstmeier actually intended to create a resulting trust.

With regard to Horstmeier's expectations, testimony indicated that even though Scott wanted to "pay her fair share," Horstmeier did not really expect Scott to pay her for the down payment or for living expenses. A resulting trust arises, "if at all, at the instant legal title is taken and vests." Hanley v. Hanley, 152 N.E.2d 879, 882 (Ill. 1958). Therefore, the question is whether a trust was created at the time Horstmeier purchased the Glenview home. When Horstmeier purchased the home, Scott had very few resources to actually pay consideration. She paid no household expenses until 1979, and even then, she never specified what those payments were for beyond reimbursement for "bills." These facts refute Scott's claim that they made any arrangement for Horstmeier advancing Scott her portion of the purchase price in exchange for deferred consideration furnished by Scott.

While "[a]cts of the alleged trustee or equitable owner subsequent to the taking of title have no bearing upon the question of whether a resulting trust was raised," these subsequent acts may be considered as evidence of intent. Id. "Intention is the key to the doctrine of resulting trusts." Wilson, 410 N.E.2d at 27. The tax court highlighted several aspects of Scott's story that work against evincing Horstmeier's intent to convey Scott a 50 percent interest in the Glenview home. We find the reasoning of the tax court compelling. If Horstmeier really expected repayment of Scott's share of the down payment and mortgage, Horstmeier probably would have been more vigilant about ensuring that Scott actually made the payments. Instead, Scott's own testimony suggests that Horstmeier did not really care if Scott paid her share or not. Consequently, sufficient doubt was created whether Horstmeier had agreed to lend Scott one-half of the down payment, with an expectation that she repay it.

Additionally, if Scott was really expected to reimburse Horstmeier for her share of the down payment, she probably would not have spent her

meager earnings on luxuries like a Porsche, a motorcycle, or the Wisconsin home. While Scott offers reasonable explanations for permitting Horstmeier to take out the second mortgage and for holding joint title in the Wisconsin home, we also find the tax court's interpretation of these events reasonable. The court surmised that while the couple agreed to own the Wisconsin home jointly, they never came to a similar agreement to jointly own the Glenview home.

Because Scott cannot set forth facts precluding all reasonable explanations except a resulting trust, her claim must fail. While Scott provided valuable services to Horstmeier and the two shared the Glenview home, these facts do not necessarily mean that Scott was a co-owner. It is equally plausible that Scott performed those services as reimbursement for the rent and living expenses Horstmeier paid on Scott's behalf. This reasonable, alternative explanation is in itself sufficient to defeat Scott's claim.

The vehicle Scott chose to establish that she had an interest in the Glenview home, a resulting trust, is one that requires clear, convincing, and unmistakable proof. The tax court judge reviewed the evidence and concluded that Scott could not meet that standard of proof. His ultimate determination was a reasonable one./1

III

We find that the tax court's determinations are not clearly erroneous. Accordingly, for the reasons stated herein, we Affirm the tax court's conclusion that the Horstmeier estate includes the entire value of the Glenview property.

/1 Although the probate court, in 1993, approved Scott's claim for a 50 percent tenancy-in-common interest in the Glenview property, the tax court was not bound by that decision. See Estate of Rowan v. Commissioner, 54 T.C. 633, 637 (1970) (citing Commissioner v. Estate of Bosch, 387 U.S. 456 (1967)) (ruling that the tax court "is not conclusively bound by a State trial court adjudication of property rights or characterization of property rights when the United States is not a party to the proceedings").